JOHN C. WINGATE and LUCINDA C., his wife,

*vs.*

JOHN W. PARSONS and HENRY A. PARSONS, Executors of WILLIAM B. PARSONS, deceased.

*Sussex, Mch. T., 1871.*

In an action by the husband and wife, against the executors of the wife's father, to recover a legacy to her, a debt due from the husband to the testator, at the time of his death, is not a subject of set-off, the debts not being in the same right,

The wife's right of survivorship in the legacy sued for, is an interest of such substance and importance that so long as it attaches, the legacy cannot be deemed, in the sense of the statute, to be due to the husband, in the same right, as is his debt to the testator's estate, *i. e.*, in his sole, individual right.

By joining his wife in a suit for her legacy, a husband exercises his election to treat it as joint property, and in such case her debt, *dum sola,* may be set off, but not his own debt. If he sues alone, his debt may be set off, but not her's, *dum sola.*

CASE STATED IN EQUITY.—Wm. B. Parsons, by his last will dated February 7th, 1867, bequeathed to his daughter Lucinda, then and now the wife of the complainant, $400, in these words : "Item, I give and bequeath to "my daughter Lucinda C. Wingate, the sum of four hun- "dred dollars, to be paid out of my personal estate to "her, her heirs and assigns." Wingate the husband was indebted to the testator, at his decease, in a sum exceed- ing the amount of the legacy. It does not appear at what date the debt was contracted. Upon a case stated, the question is submitted whether the executors can set up, "by way of set-off or otherwise," the debt of the husband against the joint claim of husband and wife to the legacy.

The will contained the following provision which was commented on in the argument, viz : "And further, it is "my will and desire that all moneys due me on bond, note, "bills or book accounts, or moneys due me, in any shape or "form, be included and taken into my personal estate, and "after all my just debts are paid, should there be any "balance over and above paying off the before mentioned "legacies that said balance shall be equally divided be- "tween all my children, share and share alike."

*Cullen,* for the complainants.

The law of set-off is the same at common law and in equity. It is necessary that the debts be due in the same right and between the same parties. This is true at com- mon law and also under our statute.

This is a suit of the wife, the husband being joined only because she cannot sue alone. Where a suit is in

*autre droit* it is treated as the suit of the person in whose right the suit is and no set-off is allowed. *Barbour on Set-off*, 54, 141 ; *Gale vs. Luttrell et al.*, 1 *Yo.& Jer.* 180 ; *Buller's N. P.* 179 ; *Grove vs. Dubois*, 1 *Term R.* 112 ; *Burrough vs. Moss*, 10 *Barn. & Cress.* 558 ; *Jamison's Ex'r. vs. Brady & wife*, 6 *S. & R.* 466.

This legacy to the wife is, *in equity*, for her separate use, though not *at law*, as much so as if so expressly declared. A court of equity will always protect the interest of the wife, as in case of divorce, bankruptcy, &c.

This is a bequest to her sole use—"to be paid to her " and her heirs and assigns," not recoverable at law, for it was subject to a trust. *Rev. Code*, 406, *Sec.* 40.

The legacy does not vest in the husband, it is not a reduction into possession ; but only a right to recover at his election. It is still but a *chose* in action, which may survive. It is at his election whether he will so act as wholly to divest the wife's interest in it. The husband could not have set off his wife's legacy, in a suit, by the executor, against him for his debt. No wrong will be done by disallowing the set-off. The recovery of the legacy is but the exercise of a right given by the father. He might have made the legacy dependent on the payment of the debt, but did not choose to do so, but rather to leave the debt to the ordinary chances of collection without encumbering the legacy. There is clearly no wrong of such a nature as to present a special equity in favor of the executor.

*Moore*, for the defendants.

*First*, As to the wife's equity.

What the husband may discharge alone and is subject to his control, if recovered, he may sue for alone. 1 *Chitty's Pl.* 29; *Clapp vs. Stoughton*, 10 *Pick.* 469; *Goddard*

*vs. Johnson*, 14 *Pick.* 352 ; *Hapgood vs. Stoughton, Ex'r.*, 22 *Ib.* 480; 2 *Kent's Com.* 135 *note b* ; *Holbrook vs. Waters*, 19 *Pick.* 354 ; *Commonwealth vs. Manly*, 12 *Pick* 175 ; *Reeve's Dom. Rel.* 60. These are principles settled even at law.

This is not a bequest to separate use. There is no indication of such an intent. There is a distinction observed, as to set-off, between legacies to separate use and legacies to wife simply. 2 *Pars. on Cont.* 738 *note x* ; *Lowman's Appeal*, 3 *W.* & *S.* 349. The cases of a wife's equity are all cases, either between husband and wife, or where the executor seeks a provision for the wife. Besides there are cases of trust, abandonment, &c. *Kenny vs. Udall*, 5 *Johns. Ch.* 473. The Court never does force a separate maintenance voluntarily, but only, (1,) upon claim on behalf of a wife or, (2,) for sufficient cause.

There is nothing in the case stated to raise this question. The wife's joining in a bill is 'an assent to the husband's receiving a legacy clear of the equity. *Whistler vs. Newman*, 4 *Ves. Jr.* 129. The Court will not interfere unless she has not a sufficient maintenance ; *Van Epps v. Van Deusen*, 4 *Paige* 64 ; *Bullock vs. Menzies*, 4 *Ves. Jr.* 798, and nothing in this case shews such a fact.

Three things are essential to the wife's equity, (1,) that she asks it, (2,) that the husband is unable or refuses to support, and (3,) that she has no other provision. *Sawyer vs. Baldwin*, 20 *Pick.* 378, 388.

The intention to create a separate use must clearly appear, and this because it is against the marital right. *Clancy on M. W.* 262-8 ; 2 *Kent Com.* 163, *note b* ; 2 *Sto. Eq. Jur. secs.* 1381-3 ; *Brandon vs. Johnson*, 2 *Ves. Jr.* 517, 521, *note* 1 ; *Jarvis vs. Prentice*, 19 *Conn.* 282 ; 1 *Wh. & Tud. L. Cas. in Eq.* 539 ; *Adams Eq.* 190.

Even under circumstances entitling the wife to an equity, it is not allowed out of a fund recoverable at law

as well as in equity.   *Udall vs. Kenney*, 3 *Cow.* 606;
*Wood vs. Keys*, 6 *Paige*, 478 ; *Burdon vs. Dean*, 2 *Ves.*
*Jr.* 609, *note* ; *Langham vs. Nenny*, 3 *Ves. Jr.* 470 ;
1 *Dan. Ch. Pr.* 133-4, 126 ; 2 *Kent Com.* (141.)

The fact that the husband owed the testator at his
death was equivalent to a reduction to possession.

Even where an equity is allowed it is only of a rea-
sonable part and not the whole.

*Secondly.*   As to the set-off.

The doctrine is not the same at law and in equity.
Set-off is a subject of original equity jurisdiction, not de-
pending upon the statute nor limited by it.    It is more
extensive in equity than at law.   The former looks to the
substance and result of the transaction,—the fact in this
case, that whatever be the form the husband will get the
money.   *Miller vs. Receiver of the Franklin Bank*,
1 *Paige* 444 ; 2 *Sto. Eq. Jur. sec.* 1432.

The right of the estate to a set-off should not de-
pend on an election to sue in one form or another—whether
alone or with the wife joined.   The right of set-off attaches
from the mutual relations of these claims at the testator's
decease, not to be varied or defeated by joining the wife.

The principle, as to debts held, in *autre droit,* is, that
if, having recovered the debt, the party suing has a right
to it, or a lien on it, set-off prevails.   *Clarke vs. Bogardus*,
12 *Wend.* 67-9 ; 2 *Roper on Leg.* 1030, *note* 1, 1063 ; 2 *Sto.*
*Eq. Jur. Sec.* 14, 34—7 *b ;* *Dunkin vs. Vandenbergh*, 1
*Paige* 623 ; *James vs. Kynnier,* 5 *Ves. Jr.* 111, *note* ; *Water-*
*man on Set-off, Sec.* 375 *also Secs.* 14, 15, 191 ; *Ex parte*
*Blagden*, 19 *Ves.* 466, *note* 2 ; *Smith vs. Kearney*, 2 *Barb.*
*Ch. R.* 533 ; 15 *S. & R.* 77 ; *Adams Eq.* 507 *note* 1 ; 24 *Vt.*
97 ; 1 *Roper on Leg.* 925 ; *Clark vs. Bogardus*, 12, *Wend.* 69 ;
*Lowman's Appeal*, 3 *W. & S.* 349 ; *Ranking vs. Barnard*, 5
*Madd. R.* 33.

In the present case the wife's joining the husband to recover the legacy, without any claim to a provision, discharges her equity, with the same effect as her death did, in the case of *Rankin vs. Barnard*, last cited.

The last clause of the will indicates an intention of the testator that this debt should be paid in, as part of the fund, out of which legacies were to be paid ; and that is conclusive, irrespective of the law of set-off.

Where a father gives a legacy to the child it is a portion and is adeemed by an advance afterwards made.

THE CHANCELLOR :—

The complainants, husband and wife, join in a suit for a legacy bequeathed to the wife during the coverture. · The defendants, executors of the testator who made the bequest, seek to retain the legacy against a debt due from the husband to the testator in his lifetime. Can this be done either by way of set-off under the statute ? or, if not under the statute, then can it be done under any equitable power of this Court independently of the statute ? · These were the questions raised in the argument.

And first, is this a case of set-off within the statute ? I am clearly of the opinion that it is not. The statute (Rev. Code 380, Sec. 21) is expressly limited to " mutual " debts " between the parties to an action due " in the " same right. The plain meaning of this phrase " due in " the same right," is that a debt due from A alone shall discharge only a debt due to A alone ; or that a debt of one character *i. e.*, whether several or joint, individual or representative, shall discharge a debt of the like character and no other. The object or policy of the provision is to save from the operation of the statute all cases in which there attaches to one of the claims, proposed to be set off, some right or interest which would be unjustly discharged or prejudiced by the set-off. Thus a

joint debt cannot be set off against a several one, because the rights of the joint creditor on the one side would thereby be unjustly extinguished by setting off a claim partly belonging to him against a debt for which he is not liable. So a debt, due to an executor or administrator, he cannot set off against his individual debt, because this would be to pay his debt with assets belonging to the creditors and legatees or distributees whom he represents. So, upon *precisely* the same principle, it is against the terms and policy of the statute, to discharge the debt of the husband with the wife's legacy. For the wife, notwithstanding her marriage, does retain in a legacy, bequeathed to her and not yet reduced to her hnsband's possession, an interest, termed her right of survivorship. Now, as to the precise nature of this right of survivorship, different views have been expressed, some judges considering that by marriage the *title* vests in the husband, but subject to a right or privilege of survivorship to the wife, if not reduced to possession and she survive him, *Johnson vs. Fleetwood*, 1 *Harring.* 442, and others considering that the title remains in the wife, subject, merely, to the husband's control and power to reduce it to his own possession. Gibson C. J. in *Timbers vs. Katz*, 6 *W. & S.* 290. The difference is not material to this case. It is quite sufficient that the wife's right of survivorship, whatever may be its nature, is treated by the law, as unquestionably it is, as an interest of substance and importance and entitled to protection as scrupulously as is the right of a joint creditor or of the creditors and legatees or distributees of an estate, in the case before put, in which set-off is excluded.

The favor with which the law regards the wife's interest in her *choses* in action is seen in the strictness of the rule as to what shall be sufficient to extinguish her right.

First, we may observe, as a general principle, that the husband only can determine his wife's right of survivorship at his free election. His creditors cannot interfere

with it except under some special statutory provision. Hence, generally, it has been held that the wife's *chose* in action cannot be attached by the husband's creditors. *Dennison vs. Nigh*, 2 *Watts* 90 ; *Marston vs. Carter*, 12 *N. H.* 159. In this State the wife's *chose* in action may be attached by the husband's creditors. *Johnson vs. Fleetwood*, 1 *Harring.* 442. That decision however rests upon the ground that our attachment law, in defining the subjects which may be attached, uses the word "rights" which, the Court held, includes the right of the husband to reduce the *chose* in action to his possession, to which, by force of the statute, the creditor might succeed, but the same decision expressly holds the wife's interest to be unaffected by the attachment, until an actual reduction to possession is effected by the attaching creditor, thus saving the rights of the wife as far as the phraseology of the statute would admit. The Court say "if he" (the attaching creditor) "can possess him- " self of the debt before the husband dies, it is his ; if he " does not do this, then the wife if she survives would be en- "titled to it." Of the same effect is an attachment in Massachusetts, 1 *Metc.* 476. With respect to what acts of the husband are sufficient to extinguish the wife's right, the law is extremely rigorous. It is now a settled principle that nothing short of *actual* and *positive* reduction into possession by the husband, or a release or an assignment for a valuable considesation, and that of a *chose* in action presently reducible to possession, is sufficient to bar the wife's right by survivorship to her *choses* in action. A voluntary assignment by the husband without considera- tion does not bind her. 2 *Kent* (137). It has been a sub- ject of long controversy whether an assignment, even for a consideration, should pass to his assignee more than the husband's power to reduce the *chose* in action to posses- sion, subject to the wife's right of survivorship, should the husband die meanwhile. It is at last settled, that an assignment for value does of itself bar the wife's right to a *chose* in action, presently reducible to posses-

sion, though not as to reversionary interests. 2 *Kent,* (137) (138) *note (a).*

Let us now note how far the regard of the courts, for the wife's interest, has gone in holding the husband to most positive and unequivocal acts of conversion, in order to alter the property and bar the wife. It has been held, that the appropriation, out of the estate of a testator, of a specific fund, as a mortgage, for payment of a legacy bequeathed to a wife, by an arrangement between the executor and the husband, and the making of some payments of interest to the husband, for which he receipted, was not a sufficient reduction to his possession to divest the wife's right of survivorship. *Blount vs. Bestland,* 5 *Ves.* 515. The husband, proving the wife's debt under a commission of bankruptcy and paying the contribution money, was held not to alter the property, so as, on his death, to defeat her right to the dividends. *Anon.* 2 *Vern.* 707. Payment of the wife's legacy into court, under a decree establishing the right of husband and wife in her right, but before any order for payment to the husband, is not sufficient. *Bond vs. Simmons,* 3 *Atk.* 20 ; *Macaulay vs. Philips,* 4 *Ves.* 17; *Clancy on M. W.* 119. Payment of interest and part payment of principal, to the husband, of his wife's *chose* in action, is not a reduction to his possession of the balance. *Nash, vs. Nash,* 2 *Madd.* 133 (1 *Dan. Ch. Pr.* 149). Even where money due to the wife comes into the hands of the husband, that is not sufficient, so long as his possession is referable to any other right than the marital right, as in *Baker vs. Hall,* 12 *Ves.* 497, where the executor and trustee under a will married one of the residuary legatees, his possession of the personal estate did not alter the property in his wife's legacy, until, by some act, he should convert her share to his own use. See also, *Wall vs. Tomlinson,* 16 *Ves.* 413.

It need hardly be said that a joint action for the wife's *chose* in action, whether one which accrued to her before

or after marriage does not affect her right, nor even does a judgment recovered in such action; *nothing short of an execution* is sufficient. *Clancy on M. W.* 113; 2 *Kent* 127 ; 2 *Ves. Sr.* 676; 6 *Johns. Ch. R.* 132 ; 9 *Paige* 283. In a suit by the husband alone, the debt becomes reduced to his possession upon the recovery of a judgment, not before. *Clancy on M. W.* 113.

Further illustration on this point cannot be necessary. It must sufficiently appear that the wife's right of survivorship to her *chose* in action is one regarded by the law with tenderness, and can be divested only by some unequivocal act of the husband intended to alter the property. The only exceptions are found in the effect given under statutory provisions to an involuntary assignment upon the husband's bankruptcy, and in this State to an attachment by his creditors. In this general view of the substantial and important character of the wife's interest, I have followed an able opinion of Chancellor Kent in *Schuyler vs. Hoyle*, 5 *Johns. Ch. R.* 625. The same views are also strongly and 'elaborately presented by Judge King in *Miller's Case*, 1 *Ashmead*, 323, by C. J. Gibson in *Timbers vs. Katz*, 6 *W. & S.* 290, and by C. J. Parker in *Marston vs. Carter & Trustee*, 12 *N. H.* 159.

I do not find that our own Courts have guarded the wife's interest in her *chose* in action with any less strictness. It has been decided in our Court of Appeals, that an equitable assignment by the husband of his wife's distributive share in satisfaction of his debt, is ineffectual to bar her right, if the husband die before the debt is reduced to the creditor's possession   *State vs. Robertson & Burton*, 5 *Harring.* 201. And, in *Lendeman vs. Lendeman's, Ex'r.*, 1 *Houst.* 523, it was held that a promissory note, given to the wife during the coverture, survived to her, if unpaid at her husband's death. This decision, in favor toward the wife, went beyond some authorities, which treat a negotiable instrument, given to the wife during

coverture, as vesting, like money, absolutely in the husband. *Lightbourn vs. Holyday*, 1 *Eq. Ca. Ab.* 1 ; *Nash vs. Nash*, 2 *Mad.* 135 (*n*) ; 1 *Dan. Ch. Pr.* 149 ; *Shuttlesworth vs. Noyes*, 8 *Mass.* 229 ; *Com. vs. Manley*, 12 *Pick.* 172. The decision in 1 *Houston* is sustained by *Nash vs. Nash*, 2 *Mad.* 133.

The conclusion to be drawn from this general examination of the subject is, that the wife's right of survivorship, in the legacy sued for, is an interest of such substance and importance that, so long as it attaches, the legacy cannot be deemed in the sense of the statute to be due to the husband, in the same right, as is his debt to the testator's estate, *i. e.* in his sole, individual right. The extinguishment of the wife's right, by such a set-off, would be contrary to the object of the statute and to the strongly marked policy of protection to the wife's interest in her *choses* in action, a policy holding it to be divested only at the election of the husband, and that to be exercised by an actual conversion, release or assignment for value. It was argued, that this Court, looking at the substance and effect of the proceeding, will hold it subject to claims against him. The answer is that no such result is certain or can be assumed. Judgment may not be recovered and execution sued out in the husband's life time, until which the wife's right of survivorship remains in force, and, while it remains, it must receive its full effect. The law will not strip her of it in anticipation and against the husband's election, merely to satisfy the husband's creditor. *Burrough vs. Moss*, 10 *B.* & *C.* 558, is directly to this point. The plaintiff, having chosen to sue alone upon a promissory note to his wife, given during the coverture, the defendant attempted to set off a debt due from the wife *dum sola.* The Court disallowed the set-off, expressly upon the ground of the husband's election exercised by the form of the action. They say, "The form of the security gave the husband a "right to treat it as joint property or as several ; and if he

" chose to treat it as several, he might deal with it as his " own and the consequence of his so treating it would be " to let in, by way of set-off to any claim by him, any debts " due from him. If on the other hand he elected to treat " it as a joint property of himself and his wife, in her right, " he might let in debts due from her in her own right, but " it is clear that both classes of debts could not be let " in." 1 *Roper, on H. & W.* (212.)

Nor is the position tenable, that the right of the executor to set-off ought not to depend upon mere form of the suit, upon the election of the husband to join his wife or to sue alone. For the conversion of the wife's *chose* in action is the right of the husband, to be exercised at his election, which election he signifies by the form of the action, and effect must be given to it. No act of the husband is a reduction to his possession contrary to his intention. This was the principle of *Wall vs. Tomlinson,* 16 *Ves.* 415, where the husband of a residuary legatee, coming into possession, as executor and trustee, of stock to which his wife was entitled, was held not thereby to have reduced it to possession, because the transfer of the stock to him was made *diverso intuitu.* And, in *Timbers vs. Katz,* 6 *W. & S.* 290, where the husband joined his wife, in a receipt for money due on a bond given to her *dum sola,* but without taking the money, was held not to have reduced the bond to his possession. C. J. Gibson says, "the ownership follows his will ; for the law " will not cast it on him against his consent." So in *Dennison vs. Nigh,* 2 *Watts* 90. It is clear then that, as it is at the husband's election, whether to bar his wife's interest in her legacy, he has power, by joining her in the suit, to protect her interest until recovery and execution and thus the creditor's right of set-off is unavoidably controlled by the form of the action.

In Pennsylvania, notwithstanding that, by some of the decisions in that State, the wife's right of survivorship

has been treated according to the strongest view, as a subsisting title and not a bare chance, still it has been held in three cases subject to be set off against the husband's debt and in one case, in a joint suit for the *chos*e in action. *Yohe vs. Barnett*, 1 *Binn.* 358 ; *Wishart vs. Downey and wife*, 15 *S. & R.* 77 ; *Lowman's Appeal*, 3 *W. & S.* 349. See also Brockenridge J., in *Murray vs. Williamson*, 3 *Binn.* 135.

These cases, however, rest upon the construction given to statutes of that State, and they are expressly distinguished from the English course of decisions. In *Yohe vs. Barnet*, 1 *Binn.* 358, which the later cases followed, the wife had an interest in certain real estate, which was the subject of proceedings for partition in the Orphans' Court. The real estate was valued and her share of the valuation money was secured, pursuant to the statutes, by a bond taken, as it seems from the report, in the husband's name. He was indebted to the intestate upon a judgment and against this, upon petition of the administrators, the money due on the bond was allowed to be set off. The decision is based upon the effect of the bond being in the husband's name, pursuant to the statute. The case in 3 *Binney*, *Murray vs. Williamson* does not touch the question, though Brockenridge J., in his opinion, refers to the English doctrine against setting off the wife's *chose* in action against the husband's debt as not in force in Pennsylvania, under the broader construction of their statute of set-off. In the next subsequent case of *Wishart vs. Downey & wife*, 15 *S. & R.* 77, on a *sci. fa.* by husband and wife, on a recognizance given to secure the wife's share of her father's estate, a debt due from the husband was set off, the court resting upon the cases in Binney, as having settled a broader rule of set-off than that of the English decisions. They say, " In England the suit being in right " of the wife and of such a nature, as that it would survive " to her, this claim could not be set off. Our law differs

"from theirs and this, if proved, was a set-off." *Lowman's Appeal*, in 3 *W. & S.* which was the case of a legacy to the wife simply follows the prior Pennsylvania cases. So that the course of decisions in that State is an acknow-ledged departure from the general rule founded upon their own statutes. It cannot escape notice that these decisions are strikingly incongruous with the strong views, taken in that State, as to the unaltered title or ownership of the wife, in her *choses* in action, until an actual reduction to the husband's possession, he having, as C. J. Gibson forcibly puts it in *Timbers vs. Katz*, 6 *W. & S.* 290, "no sem-"blance of ownership in the meantime" *i. e.* until the conversion to his possession.

In *Ferguson vs. Lathrop*, 15 *Wend.* 625, the husband and wife having joined in a lease of the wife's premises and distrained together for the rent, the tenant was allowed to set off a demand against the husband alone, and the court go so far as to announce broadly that "a legal "demand against him ought not to be defeated by making "an unnecessary use of the name of his wife,"—that as he had a right voluntarily to receive the rent or to receive payment of it by the satisfaction of the debt he owed the defendant without violating the rights of his wife, the law may compel him to do it without such violation. As applied to that case the principle stated was correct ; because the accruing rents of the wife's real estate were the husband's absolutely without any right in the wife and the wife was improperly joined both in the lease and in action for the rent : but it is wholly unsustained by authority or principle, as applied to *choses* in action of the wife, in which the wife retains an interest, determinable only, as we have seen, at the voluntary election of the husband, or in some cases, of his assignee.

It is worthy of notice that so far as this decision rests, as it does, upon the consideration that the husband might have sued alone, even were its conclusion tenable

that therefore the case should be treated as if he had sued alone, would not be applicable to a suit in equity, for there the husband is required in all cases to join his wife, to the very end that her interest in her *choses* in action may be protected. A directly contrary decision in New York is *Mollan vs. Griffith*, 3 *Paige* 402. In a suit by husband and wife, to recover rents and profits of the wife's real estate, against executors who had collected them, the executors sought to set off the amount of an overpayment which they had made to the husband, for a legacy to the wife, he having given a bond to refund in case of a deficiency of assets, which there proved to be. The Chancellor disallowed the set-off, holding that the debts were not due in the same right, the demand for the rents and profits being in right of the wife and such as would belong to her by survivorship, whereas the overpayment to the husband, upon the legacy, was his individual debt.

Turning now to the English cases we shall find that they treat both debts due to the wife and from the wife *dum sola*, as being in a right so distinct from debts due to or from the husband, as to preclude set-off between them, under all circumstances, unless the husband shall have converted her *choses* in action to his use, or have assumed her liabilities. A case from the Common Pleas in 4 Geo. III, *Paynter vs. Walker*, is cited in *Buller's N. P.* 179, (a book itself of great authority) to the point that "a debt due to a man in right of his wife cannot be set "off in an action against him on his own bond.". *Wood vs. Akers*, 2 *Esp. Rep.* 594, proceeds upon a like distinction between the husband's liability for the wife's debts and for his own. There the husband sued for a debt due to himself, and the defendant was not allowed to set off a debt owing by the wife *dum sola*, the husband not having assumed it, and his liability being subject to be determined by his surviving her. Upon the same principle in *Burrough vs. Moss*, 10 *B. & C.* 558, where the husband

sued alone upon a promissory note given to the wife during coverture, thus making it his separate property, it was held that defendant could not set off a debt due from the wife *dum sola*. The Court, there in stating the effect of the joinder or non-joinder of the wife upon the question of set-off, say, that if the husband, instead of suing upon the note of the wife in his own name, had "elected to "treat it as the joint property of himself and his wife "in her right he might let in debts due from her in her "right, *but it is clear that both classes of debts could not* "*be let in*" *i. e.,* her debts and his own debts. These cases abundantly show that in the common law courts the joint rights or the joint liabilities of husband and wife cannot, and the husband's separate demands or liabilities cannot be set off. The cases in equity, so far as the question has arisen, are to the same effect, with this difference in favor of the wife, that, whereas at law the husband may or may not join her in a suit for a *chose* in action accruing during the coverture, being then obliged to join her only for those which accrued to her *dum sola*, in equity he is required to join her in all cases, so that, in a court of equity, the wife's *chose* in action is always protected against set-off. *Lady Elibank vs. Montolieu,* 5 *Ves. 737* was cited as an authority in favor of setting off the balance of a wife's distributive share, against the husband's debt to the intestate, after satisfying out of it her equity to a settlement. But the case decides only that on a bill filed on behalf of *the wife alone* against the administrator *for* a settlement the administrator could not set off the husband's debt against the wife's equity ; and it was referred to a master to determine what should be a reasonable settlement : but what disposal should be made of the balance of the distributive share after making the settlement was not a question before the court, nor was at all dwelt upon. Nor very clearly could it have been acted upon or any question of set-off against the balance have arisen except in a case between the administrator and the husband

or as in the case next cited between the administrator and the husband's assignees.

In the subsequent case of *Carr vs. Taylor*, 10 *Ves.* 575, the same question arose and was decided. The bill was filed by the wife against an administrator for a distributive share to have the whole share settled upon her in consequence of the husband's bankruptcy. The administrator claimed to retain a debt due from the husband. The assignees in bankruptcy being parties and claiming the whole share, the question of set-off was involved not only as against the wife's equity, but as against the surplus to which the assignees would be entitled. The Master of the Rolls, Sir Wm. Grant, disallowed the set-off altogether, decreeing the distributive share to the assignees, subject to a settlement to be made by them out of it upon the wife. The language of Sir Wm. Grant is very direct. " with regard" he says, "to the claim of set-off made by " the administratrix of Taylor upon the ground that the "plaintiff's husband was indebted to the estate of the in- " testate, whatever controversy there might have been " upon the right of the husband to sue in his own name " for the legal *choses* in action of his wife, he could not " sue for this fund without joining her ; and if he had ob- " tained a decree for it in her right, and died before he " had reduced it into possession it would have survived. " This is a case, therefore, in which there can be no set- " off for the debt of the husband." Now it can make no difference, as to the application of the principle thus stated to our case, that by statute a legacy is made a legal *chose* in action, which the husband may sue for alone at law. For these parties are now in equity, where their rights stand precisely as they did before Sir Wm. Grant, and, further, even at law, as has been abundantly shewn, the husband may preserve all his wife's rights in a legal *chose* in action by joining her with him in a suit at law.

The question was next touched, but without any

decision upon it, in *McMahon vs. Burchell*, 3 *Hare* 97 and 5 *Hare* 322, before V. C. Sir James Wigram. Upon a bill for a legacy payable to the husband, and also for one payable to the wife, the executors claimed to set off rent due from the husband, for certain premises occupied by him as tenant, in common with the testator. The Vice Chancellor held the set-off available as against the husband's legacy, adding as reported in 3 *Hare*, "but it will not form any set-"off against the legacy to the plaintiff, Henrietta his wife." The case came before him again as reported in 5 *Hare*, upon the report of the Master to whom it had been referred to inquire what amount of rent was due from the husband to the testator. By the report of the Master no rent was found due applicable to the legacies. The report being sustained there was an end of the case before the Vice Chancellor, but at the conclusion he said that the report in 3 *Hare* of his remark as to the set-off against the wife's legacy was inaccurate ; that his meaning was not that the husband's debt could not be set-off at all against the wife's legacy but that it could not be so set-off to the prejudice of the wife's equity (if any) to a settlement. With the Vice Chancellor's explanation, his remark as first reported ceases to be an authority against the set-off of a husband's debt against the balance of a legacy after a settlement on the wife but the explanation itself expresses no opinion in favor of a set-off against such balance.

A very decisive case in protection of the wife's legacy against her husband's debts came in the same year (1843) before V. C. Sir L. Shadwell. *Harrison vs. Andrews*, 13 *Simons* 595. There one Waters and wife had agreed with the executors that a legacy of £100 to the wife should be set off against the like sum due from the husband to the testator on a promissory note, and he and his wife signed a receipt for the legacy ; but *it did not appear that the executors had delivered up the note to him.*

The husband died, the wife surviving. She was decreed to have the legacy paid to her, the Vice Chancellor hold-that "nothing but a release by her "husband or payment of it to him could be a discharge of it "as against his surviving wife."