## Grebill's Appeal.

Where a husband, before the Act of 1848, never claimed his wife's money as his own, the assertion of title to it by a bequest in his will did not make it a part of his estate which he could transfer to his son after his wife's death.

May 8th 1878. Before AGNEW, C. J., MERCUR, GORDON, PAXSON, WOODWARD and TRUNKEY, JJ. SHARSWOOD, J., absent.

Appeal from the Orphans' Court of *Lancaster county*: Of May Term 1878, No. 27.

Appeal of John B. Grebill, legatee under the will of John Grebill, Sr., deceased, from the decree of the court directing the payment of a certain sum named in the will of decedent.

John Grebill, Sr., by his will proven the 19th of September 1840, among other things, directed as follows:—

"4. I give and bequeath unto my beloved wife Susanna, the interest of a principal sum of $2000, which interest money at such rate as can be obtained by my executors. shall be paid to my said beloved wife annually, on the first day of April, during her continuing my widow and no longer; and in case my beloved wife Susanna should get married again, then and in such case I do hereby give and bequeath unto her the sum of $647.20, lawful money (being the amount she had when we got married), to be paid to her out of said principal sum of $2000, and the balance of said sum to be paid as hereinafter directed."

[Grebill's Appeal.]

" 5. I do give and bequeath unto my youngest son John (by my wife Susanna), the sum or legacy of $2000, which shall be retained by my executors out of my estate and placed at interest on good security for such percentage as can be obtained to and for the use of my said son John, until he arrives at the age of twenty-one years, when the same with all interest accrued shall be paid to him, his heirs or assigns; and in case the annual interest before given and bequeathed to my beloved wife during her widowhood, should prove insufficient for the maintenance and support of my said beloved wife and my said son John being with her, in such case I hereby order and direct my executors to pay unto my said beloved wife annually as much of the interest accruing on the said sum of $2000, bequeathed to my said son John, as will accomplish said object during the time my son John will live with my widow."

" And further, I give and bequeath unto my said son John, his heirs and assigns, the aforesaid sum of $2000, whereof my beloved widow receives the interest during her widowhood, to be paid to my said son at the death of my said beloved wife, if she die my widow; but at the marriage of my said wife, then the balance of said sum, after paying thereout such part before bequeathed to my wife, shall only be paid to or for the use of my son John."

The executors of the will of said testator filed their account in the register's office on the 30th day of October 1845, in which they took credit for the sum of $2000, which sum they retained to meet the provision in the 4th section of testator's will.

John, the son, was born on the 23d of May 1837, and became of age May 23d 1858.

Susanna, the widow, did not marry again and died November 30th 1876.

The petition of John B. Grebill, the son, in this case, prayed for an order directing Jacob Grebill, the surviving executor, to pay him the said sum of $2000, with interest, from the time of the death of the widow. This order the court refused; but ordered and decreed that the surviving executor should pay to the petitioner the said sum, less $647.20.

The remaining facts will be found in the opinion of the court.

The foregoing decree was assigned for error.

*A. Herr Smith* and *D. G. Eshleman*, for appellant.

*George Brubaker* and *H. C. Brubaker*, for appellee.

Mr. Justice WOODWARD delivered the opinion of the court, October 7th 1878.

No copy of John Grebill's will has been printed in either of the paper-books, and no statement of its general scope and tenor has

[Grebill's Appeal.]

been presented. In the absence of evidence and suggestion, it may be assumed that the testator provided for the distribution of his entire estate. If he did so, and if the property he possessed has been divided among his beneficiaries, it would seem certain that there is no fund in the hands of the surviving executor for the payment of the sum of $647.20 claimed by the appellant, if that sum belonged in fact at the time of the testator's death to his widow.

By the fourth clause of the will, the annual interest on $2000 was bequeathed to Mrs. Grebill during her widowhood. The bequest was made subject to modification in these words: "In case my beloved wife Susanna should get married again, then and in such case I do give and bequeath unto her the sum of $647.20, lawful money, being the amount she had when we got married, to be paid to her out of said principal sum of $2000; and the balance of said sum to be paid as hereinafter directed." Another legacy of $2000 was given in the fifth clause of the will to the testator's youngest son, John, the appellant. The executors were required to invest this money, and to pay it with the accrued interest to the legatee when he should become twenty-one years of age. They were authorized, however, to apply so much of the interest of the legacy as should be required for the maintenance of the widow and the son, they living together, in case the interest previously bequeathed to the widow should be insufficient to maintain them. The fifth clause closed with the following provision, relating to the fund set apart by the fourth clause for the benefit of the widow: "And further, I give and bequeath unto my said son John, his heirs and assigns, the aforesaid sum of $2000, whereof my beloved widow receives the interest during her widowhood, to be paid to my said son at the death of my said beloved wife, if she die my widow; but at the marriage of my said wife, then the balance of said sum, after paying out such part before bequeathed to my wife, shall only be paid to or for the use of my son John."

Mrs. Grebill did not marry, and after her death, the present demand of the appellant for the whole sum of $2000, the interest of which had been given to her, was asserted. To the extent of $1352.80, the demand was not resisted; but the surviving executor of the will denied the right of the claimant to the residue, amounting to $647.20, on grounds which were held to be adequate by the Orphans' Court. After her marriage, and in her husband's lifetime, a sum precisely equal to this residue had been found due to Mrs. Grebill in a settlement with George Groff, her guardian. At the request of both the husband and wife, Mr. Groff retained the money, and, as he testified in 1843, "gave her a bond for it and put it out at interest." The principal of the fund remained in his hands until Mr. Grebill died, and was subsequently paid to the widow, who in the meantime had received the interest. After the

receipt of the money from the guardian, Mrs. Grebill brought suit to recover one year's interest on $2000. The cause was tried in August 1843, and the verdict of the jury found that this sum of $647.20, specified in the fourth item, was the identical sum which had been ascertained to be due from the guardian, and had been retained in his hands. Having elected to treat that money as her own, and not subject to disposal by her husband, and having obtained possession of it from its custodian, the Court of Common Pleas held that Mrs. Grebill was entitled to recover the interest only on the remaining sum of $1352.80. In accordance with that decision, interest was paid to her on that sum from the date of the trial to the date of her death.

It is clear from the evidence submitted to the Orphans' Court, that the balance found due by Mrs. Grebill's guardian never passed into the actual possession of her husband. It appeared that he had exercised some dominion over it, it is true, but it was kept apart from his personal funds, was recognised as separate property of his wife, and the security for it was stated by the guardian to have been given to her. Though, before the Act of 1848, marriage was in effect a gift of the wife's personal estate in possession, it was but a conditional gift of her chattels in action, such as debts, contingent interests, money owing her on account of intestacy, or orphans' portions in the hands of the chamberlain of London: 2 Ventr. 341. At common law a husband had a naked power over the *choses in action* of his wife, but it was one which he was not obliged to exercise even for the benefit of creditors: Dennison *v.* Nigh, 2 Watts 90. Nothing has been shown even tending to prove that during his lifetime Mr. Grebill ever claimed his wife's money as his own, and the assertion of title to it by a bequest in his will could not affect rights which she had been permitted to retain. That bequest did not, therefore, make it part of his estate which he could transfer to his son after his wife's death. It was said in Hartman *v.* Dowdel, 1 Rawle 279, that a husband could assign a security belonging to his wife, but in order to make the assignment valid, the assignee would have to show that he was a purchaser. "In other words," the court said, "the husband may sell his wife's *chose in action*, but cannot give it away freed from the incidents of the marriage." In that case it was ruled that an assignment of a wife's interest in her father's estate as a collateral security for her husband's debt, did not deprive her of her right of survivorship, the husband having died before the interest was reduced to possession. There can be no question, under the undisputed facts presented here, that the sum of $647.20 in controversy was intended to be included as part of the $2000 on which interest was to be paid to Mrs. Grebill. But it was her property, and not her husband's. When she reclaimed it, she withdrew it from the control of his executors, and to just that extent reduced what he treated in

[Grebill's Appeal.]

his will as the volume of his estate. So far as the amount in question is concerned, the gift to the son amounted to a legacy of an identified and specified fund, to which the testator had no title. And the appellant has produced no reasons to support his demand that the fund should be replaced by a resort to the general assets of his father's estate.

Decree affirmed, and appeal dismissed at the costs of the appellant.